2026 IL App (1st) 250741-U

No. 1-25-0741

First Division
August 3, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| MELVIN SPROLLS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 24 L 006939 |
| WEBB CHEVROLET, | ) | |
| | ) | Honorable |
| Defendant-Appellee. | ) | Daniel J. Kubasiak |
| | ) | Judge, Presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's order granting defendant's motion to dismiss is affirmed where plaintiff's allegations were barred by the Statute of Frauds and failed to state a legally sufficient claim.

¶ 2    Plaintiff-appellant Melvin Sprolls filed suit against defendant-appellee Webb Chevrolet, Inc. (Webb), alleging various claims arising from Webb's refusal to complete the sale of a 2020 Chevrolet Corvette Stingray. In response, Webb filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2024)), which

the circuit court granted. On appeal, Sprolls contends that the circuit court erred when it granted Webb's motion because (1) the online ordering process and Webb's acceptance of his deposit and payment established an enforceable contract; (2) Webb's failure to disclose its franchise restrictions while accepting his payment constituted actionable consumer fraud; (3) full payment and delivery of the vehicle to his transport carrier vested title in Sprolls under the Uniform Commercial Code; and (4) his allegations of tortious interference and fraudulent concealment were sufficiently specific to withstand dismissal. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The following factual summary is derived from the pleadings, affidavits, and exhibits contained in the record.

¶ 5      Sprolls generally alleged that in August 2020, he inquired about the purchase of a 2020 Chevrolet Corvette Stingray (the Vehicle) from Webb. According to Sprolls, Webb's sales representative, Marcus Greene, informed him about the terms and conditions for the factory-presale of the Vehicle. However, Greene did not disclose that Webb's franchise agreement prohibited Sprolls from purchasing the Vehicle for or on behalf of another individual or entity. Neither did Webb ever inform Sprolls that his purchase was a violation of Webb's franchise agreement with Chevrolet/General Motors. According to Sprolls, Webb's failure to disclose those conditions induced him to proceed with the purchase. Sprolls made a down payment to purchase a "manufacturer direct-to-consumer custom order" of the Vehicle.

¶ 6      On October 15, 2021, Sprolls and Webb agreed upon amounts pursuant to the terms and conditions of the manufacturer direct-to-consumer custom order and Sprolls tendered payment of the full balance of $75,302.67 in the form of two certified checks, which Webb acknowledged as received. Sprolls arranged for a third-party transporter to pick up the Vehicle and deliver it to a

"prearranged destination." Upon the transporter's arrival, Webb turned over the Vehicle to Sprolls and allowed the transporter to load the Vehicle onto the transport truck. After the Vehicle was loaded onto the transport truck, Webb's general sales manager, Christopher Irving, physically blocked the transport truck from leaving with the Vehicle.

¶ 7     According to Sprolls, after a "heated discussion with [Irving], the third-party transporter told [Sprolls] that this appeared to be a civil matter that needed to be resolved between the purchaser and seller." The transporter then unloaded the Vehicle from his transport truck as demanded by Webb. Webb subsequently took control of the Vehicle and stated the sales contract was cancelled.

¶ 8                                    A. Complaint

¶ 9     On June 25, 2024, Sprolls, appearing *pro se*, filed a six-count complaint against Webb. Count I alleged that Webb breached a valid contract between the parties by failing to deliver the Vehicle despite receiving full payment. Count II alleged a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2024)), based on Webb's alleged failure to disclose the "auto sales disclosure/bill of rights act information." Count III alleged promissory estoppel, as Sprolls relied on material representations to his detriment. Count IV alleged that Webb violated Sprolls' "right to due process" by depriving him of the Vehicle "absent of any notice or any emergent needs." Count V alleged that Webb tortiously interfered with an economic opportunity by purposefully withholding the purchased Vehicle. Finally, count VI alleged fraud and deceptive practices and claimed that Webb knowingly and fraudulently concealed its withholding of Sprolls' property, and that Webb's repeated statements that it would arrange for purchase and delivery of the Vehicle were knowingly false statements of material fact made with the intent to induce Sprolls to purchase the Vehicle.

¶ 10                                    B. Motion to Dismiss

¶ 11     On September 11, 2024, Webb filed a combined motion to dismiss the complaint under section 2-619.1 of the Code. In particular, Webb argued that counts I and III of the complaint should be dismissed pursuant to section 2-619 because they were barred by the Statute of Frauds. Webb moved to dismiss the remaining counts of the complaint under section 2-615 of the Code, arguing that they failed to state any valid claim and that Sprolls suffered no cognizable injury or damages because Webb returned all of Sprolls' money.

¶ 12     In support of its motion, Webb submitted the affidavits of Greene and Irving. In his affidavit, Greene averred that in August 2020 he and Sprolls spoke about making a direct-to-consumer purchase of the Vehicle. Sprolls completed an online build of the Vehicle through Chevrolet.com and made a $3,000 deposit with Webb "to secure a spot on a waiting list" for the opportunity to purchase the vehicle upon its delivery to Webb's dealership. Greene further averred that Sprolls did not tell him that he intended to ship the Vehicle to his brother's dealership for resale. Greene did not prepare or sign a "Motor Vehicle Contract of Sale" listing an agreed upon final purchase price for the Vehicle, or any other purchase-related documents, including, but not limited to, an application to transfer title to the Vehicle to Sprolls or a "Sales Tax Transaction Return."

¶ 13     In his affidavit, Irving averred that he had personal knowledge of Sprolls' offer to purchase the Vehicle. He further averred that General Motors LLC prohibits Webb from selling any of its vehicles to anyone engaged in the business of reselling, brokering, or wholesaling of motor vehicles. In October 2021, after the Vehicle was delivered to Webb's dealership, Sprolls requested that Webb (1) use his brother's vehicle dealer's license to avoid paying sales tax and (2) use his brother's dealership's address on the title to the Vehicle. Sprolls also requested that the Vehicle

"remain wrapped, the plastic stay on the seats, and the fuel tank remain empty." These requests raised Irving's suspicion that he intended to resell the Vehicle. On October 15, 2021, upon Sprolls' arrival to pick up the Vehicle, Irving asked Sprolls what his true intentions were for the Vehicle. In response, Sprolls said that his brother had a dealer's license and that he intended to resell the Vehicle. Upon learning this, Irving responded that Webb was prohibited from selling the Vehicle to anyone "engaged in the business of reselling or brokering motor vehicles." On that basis, Webb rejected Sprolls' offer to purchase the Vehicle. Irving additionally averred that neither he nor any other authorized representative of Webb prepared and signed a written "Motor Vehicle Contract of Sale" for the Vehicle or any other purchase-related documents to finalize a purchase transaction involving the Vehicle with Sprolls. Webb returned Sprolls' deposit, along with the two undeposited certified checks via Federal Express.

¶ 14    On November 6, 2024, Sprolls filed his response in opposition to Webb's motion to dismiss, arguing that the motion should be denied as to all six counts. As to count I, Sprolls argued that the parties entered into a written contract and that he fully performed by tendering payment of $75,302.67. Sprolls argued additionally that he did in fact have a written agreement, which was forcibly taken from him by Irving when he was picking up the Vehicle and subsequently forced out of Irving's office. Regarding count II, Sprolls asserted that Irving wrongly assumed that Sprolls wanted to resell the Vehicle, when in fact he was going to transport the Vehicle to his brother's location for storage during the winter season. Regarding the remaining counts, Sprolls argued generally that his allegations were legally sufficient to survive a motion to dismiss and that dismissal was premature without the opportunity for discovery.

¶ 15    Sprolls attached his own affidavit to his response and attached as exhibits copies of the certified checks, a credit card statement reflecting a $3,000 charge to Webb, and the Chevrolet.com

vehicle build sheet. In his affidavit, Sprolls averred that on August 13, 2020, he went to Webb's place of business, engaged in negotiations and subsequently purchased a 2020 Chevrolet Corvette Stingray RWD Coupe 1 LT. Webb "enacted an online order process that was in electronic format only with no other options from manufacturer's direct-to-consumer." Pursuant to the terms of the agreement, Webb would inform Sprolls after the online down payment was made. Sprolls made the purchase based on the promise that "pick-up delivery of [the] purchased custom corvette [would] be in shipped within a year." Sprolls further averred that on or before October 15, 2021, he was instructed to come to Webb to pick up the Vehicle; he made the final payments via checks and VISA, for a "Final Payment total" of $76,302. Following Webb's acceptance of the final payment and "picking up the vehicle, [Sprolls] was called back into Irving's office, whereupon Irving took his written contract from him," terminated the "Bill of Sale" based on "false assumptions" and escorted Sprolls from the office.

¶ 16    On November 20, 2024, Webb filed its reply in support of its motion to dismiss, noting that Sprolls attached no purchase contract signed by Webb and that his claim to have possessed a written contract that was forcibly taken from him was "self-serving and conclusory." Webb also attached as an exhibit the disclaimer in the "important note section" from the Chevrolet.com website that states that the online build specification sheet "is intended as an estimate and is not a sales contract," and that "you are not obligated to purchase this vehicle until you have signed the applicable documents." Webb reiterated that because it returned Sprolls' money, Sprolls could not establish damages under any count.

¶ 17    On February 6, 2025, the circuit court granted Webb's motion to dismiss all six counts with prejudice.

¶ 18    On May 4, 2025, Sprolls filed a motion to reconsider, which was denied.

¶ 19    This appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21    Sprolls presents five major contentions on appeal. He contends that the circuit court erred (1) in dismissing counts I and III under the Statute of Frauds by misapplying Illinois law regarding electronic contracts and part performance; (2) in dismissing count II, the consumer fraud count, by mischaracterizing the nature of deceptive acts under Illinois law; (3) in dismissing count IV, the due process claim, by misapplying Illinois property law and the state action doctrine; (4) in dismissing counts V and VI by applying incorrect pleading standards and ignoring specific allegations; and (5) by failing to consider his rights under the Magnuson-Moss Warranty Act and federal consumer protection law.

¶ 22    As an initial matter, we must consider whether Sprolls' brief complies with Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020). Rule 341 governs the form and content of appellate briefs. *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8. Compliance with our supreme court rules is mandatory, and a party's *pro se* status does not excuse noncompliance. *Id.*

¶ 23    Rule 341(h)(7) requires the appellant's brief to contain "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Arguments that do not comply with Rule 341(h)(7) may be forfeited. See *U.S. Bank v. Lindly*, 397 Ill. App. 3d 437, 459 (2009). A reviewing court has no obligation to act as an advocate for a party or to search the record for support for the party's claims. *Id.* Nor may an appellant foist the burden of argument and research onto this court. *Sciarrone v. Village of Island Lake*, 2025 IL App (2d) 240153, ¶ 11.

¶ 24    Here, Sprolls' brief does not fully comply with Rule 341(h)(7). Although Sprolls raises several challenges to the circuit court's dismissal order, his argument section frequently fails to

cite to the pages of the record supporting his factual assertions. In addition, several portions of his argument are not consistently supported by citation to relevant legal authority. These deficiencies make it difficult to determine the precise factual and legal bases for some of his claims.

¶ 25    Nevertheless, we recognize that dismissal of an appeal or forfeiture of arguments based on briefing deficiencies is harsh. See *Ammar v. Schiller, Ducanto and Fleck, LLP*, 2017 IL App (1st) 162931, ¶ 11. Such a decision is appropriate only where the violations of Rule 341 preclude or substantially interfere with our review. *Id*. Although Sprolls' brief is deficient, we are able to discern the general nature of his arguments, and we have the benefit of the record and Webb's brief. Accordingly, we decline to dismiss the appeal or find Sprolls' arguments forfeited on this basis alone and will address the merits of the circuit court's judgment. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001).

¶ 26                                A. Standard of Review

¶ 27    This appeal challenges an order granting Webb's combined motion to dismiss filed under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2024)). Section 2-619.1 permits a party to file a single motion containing motions pursuant to both section 2-619 and section 2-615 of the Code, so long as each motion is separated into a different part of the document. *Id*.

¶ 28    A section 2-619 motion to dismiss admits the legal sufficiency of the complaint but raises defects, defenses, or other affirmative matters that appear on the face of the complaint or are established by external submissions that defeat the plaintiff's complaint. *Id*. § 2-619 (West 2024); *Ball v. County of Cook*, 385 Ill. App. 3d 103, 107 (2008). In contrast, a section 2-615 motion challenges the legal sufficiency of the complaint based on defects apparent from the face of the pleading. *Beacham v. Walker*, 231 Ill. 2d 51, 57 (2008).

¶ 29     In considering a combined motion to dismiss pursuant to section 2-619.1, we accept all well-pleaded facts in the complaint as true, drawing all inferences from the facts in favor of the non-moving party. *Younge v. Berman*, 2025 IL App (2d) 240354, ¶ 18**.** However, we will disregard mere conclusions of law or fact not supported by specific factual allegations. *White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 282 (2006). Our review under either section is *de novo*, and we may affirm the circuit court's judgment on any basis in the record, regardless of the court's reasoning. *Glasgow v. Associated Banc-Corp.*, 2012 IL App (2d) 111303, ¶ 11.

¶ 30                              B. Contract Claims (Counts I and III)

¶ 31     We first address Sprolls' claims for breach of contract (count I) and promissory estoppel (count III), which the circuit court dismissed pursuant to section 2-619 of the Code. Sprolls argues that the circuit court erred in dismissing his claims because its ruling (1) contradicted the record that "no final price was agreed upon," (2) failed to consider the Electronic Commerce Security Act, which validates electronic contracts and provides that electronic records satisfy writing requirements for consumer transactions, (3) ignored that Webb's acceptance of payment satisfied the part performance exception under section 2-201(3)(c) and removed the transaction from the Statute of Frauds, and (4) improperly relied on unchallenged affidavits.

¶ 32     Webb responds that the Statute of Frauds bars Sprolls' breach of contract and promissory estoppel claims. Webb notes initially that, based on Sprolls' own allegations, the Vehicle's cost exceeded $500 and that there was no writing signed by Webb. Additionally, Webb points to a disclaimer on the Chevrolet.com specification sheet which states, as relevant here, that "[t]his information is intended as an estimate and is not a sales contract." Further, Webb notes that Sprolls failed to attach to his complaint any writing signed by Webb and cannot establish an enforceable contract for the sale of the Vehicle.

¶ 33    The Statute of Frauds states, in relevant part, that:

> "Except as otherwise provided in this Section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is a record sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by the party's authorized agent or broker." 810 ILCS 5/2-201(1) (West 2024).

¶ 34    Sprolls maintains that the Statute of Frauds was satisfied by the Chevrolet.com online build specification sheet, which he contends constituted a written contract reflecting an agreed-upon purchase price and bore sufficient indicia of a binding agreement between the parties. However, that document is insufficient for several reasons. First and foremost, it is not signed by a representative from Webb, "the party against whom enforcement is sought[.]" *Id.* Rather, it contains explicit disclaimers in the "important note" section stating that it "is intended as an estimate and is not a sales contract," that final pricing is "subject to the dealer's preparation of final sales documents," and that the buyer "is not obligated to purchase this vehicle until you have signed the applicable documents." *Beard Implement Co. v. Krusa*, 208 Ill. App. 3d 953, 961 (1991). Moreover, Webb's affidavits establish that sales documents were never created or signed.

¶ 35    Sprolls nevertheless also argues that a valid contract was formed under the part performance exception in section 2-201(3)(c) of the Statute of Frauds, which provides that an otherwise enforceable contract for goods that does not satisfy the writing requirement is still enforceable if "payment has been made and accepted." *Id.* § 2-201(3)(c) (West 2024). We acknowledge that the $75,302.67 payment amount was most likely the cost of the Vehicle as generated by Webb and communicated to Sprolls. Indeed, nothing in the record indicates otherwise. However, Irving's affidavit establishes that Webb never accepted the payment. Instead,

the record shows that the two certified checks presented by Sprolls were never deposited and were returned to him along with his deposit. Sprolls does not dispute that the checks were not cashed and were returned. Because Webb never accepted payment within the meaning of the statute, the part performance exception does not apply.

¶ 36    Additionally, Sprolls' reliance on the Illinois Electronic Commerce Security Act is groundless as the Act was repealed effective June 25, 2021. 5 ILCS 175/1-101. Even if it remained in force, the record establishes that the online transaction was conducted through Chevrolet.com, the manufacturer's platform, which did not constitute a final purchase contract as reflected in the "important note" section of the page. This supports the conclusion that neither Sprolls nor Webb ever manifested electronic assent to any terms.

¶ 37    Finally, Sprolls' argument that the circuit court improperly relied on Webb's affidavits as being uncontested is without merit. Citing *Porter v. Decatur Memorial Hospital,* 227 Ill. 2d 343, 353 (2008), Sprolls asserts that the court "misstates the burden under 735 ILCS 5/2-615," and notes that in reviewing a motion to dismiss, "all well-pleaded facts must be taken as true and viewed in the light most favorable to the plaintiff." He maintains that the court cannot rely on defendant's affidavits to contradict the plaintiff's complaint at the pleading stage. Webb responds that because Sprolls filed no counter-affidavits, the factual assertions in Webb's affidavits were admitted.

¶ 38    We note initially that Sprolls' argument conflates the applicable burdens in presenting and responding to section 2-615 and section 2-619 motions. Here, the circuit court dismissed counts I and III under section 2-619, not section 2-615. Subsection 2-619(a)(9), upon which Webb's motion to dismiss was based, permits dismissal where "the claim asserted * * * is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9)

- 11 -

(West 2024). The phrase "affirmative matter" includes any defense other than a negation of the essential allegations of the plaintiff's cause of action. *Kedzie and 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993). Thus, it is recognized that a section 2-619(a)(9) motion admits the legal sufficiency of the plaintiff's cause of action much in the same way that a section 2-615 motion to dismiss admits a complaint's well-pleaded facts. *Id.* Where the "affirmative matter" is not apparent on the face of the complaint, the motion must be supported by affidavit. *Id.* at 116. By presenting adequate affidavits supporting the asserted defense, the defendant satisfies the initial burden of going forward on the motion. *Id.* The burden then shifts to the plaintiff. *Id.*

¶ 39    The plaintiff must establish that the defense is unfounded or requires the resolution of an essential element of material fact before it is proven. *Kedzie*, 156 Ill. 2d at 116. The plaintiff may do so by submitting a counteraffidavit. *Piser v. State Farm Mutual Automobile Insurance Co.,* 405 Ill. App. 3d 341, 352 (2010). A plaintiff's failure to either challenge or contradict supporting affidavits filed with a section 2-619 motion results in an admission of the facts averred therein. *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995); *Colon v. Illinois Central Railroad Company*, 2024 IL App (1st) 221841, ¶ 25 (under section 2-619, affidavits submitted in support of the motion are taken as true unless contradicted by an adequate counter-affidavit).

¶ 40    Significantly, a plaintiff may not simply rely upon the allegations in his own complaint to refute a section 2-619 affidavit. *Hollingshead v. A.G. Edwards & Sons, Inc.,* 396 Ill. App. 3d 1095, 1101-02 (2009). Here, Sprolls presented an affidavit. However, its contents were inadequate to defeat the assertions made in Webb's affidavits. Although Sprolls averred that his contract was taken from him, he never averred that the document had been signed by the parties, which was the affirmative matter under the Statute of Frauds on which Webb relied to secure dismissal pursuant to section 2-619 of counts I and III of the complaint.

¶ 41    For these reasons, the circuit court did not err in dismissing counts I and III pursuant to section 2-619 of the Code. We next turn to Sprolls' remaining claims, which were dismissed pursuant to section 2-615 of the Code.

¶ 42                              C. Fraud Claims (Counts II, VI)

¶ 43    Sprolls argues that the circuit court erred in dismissing his consumer fraud claim (count II) because (1) Webb's failure to disclose that his purchase violated its franchise agreement constituted an actionable material omission under the Illinois Consumer Fraud and Deceptive Business Practices Act (Act), (2) the circuit court improperly characterized plaintiff as the deceptive party, and (3) the circuit court failed to apply proper pleading standards. Regarding his "common law" fraud claim (count VI), Sprolls argues that the circuit court erred by applying an overly restrictive pleading standard. In his reply brief, he sets out the elements to state a claim of common law fraud and argues that each element in his complaint "for fraudulent representation and fraudulent concealment adequately and sufficiently allege each of the five elements necessary to allege an action for fraud." Webb responds that dismissal pursuant to section 2-615 was proper where Sprolls failed to allege a deceptive act.

¶ 44    We address each of Sprolls' fraud claims in turn. Before proceeding, however, we deem it worth noting that Illinois is a fact-pleading state. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429-30 (2006). Although the complaint need not include evidence, it must allege facts sufficient to bring a claim within a legally recognized cause of action. *Id.* The circuit court is not permitted to admit conclusory allegations or conclusions of law unsupported by specific facts. *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 406 Ill. App. 3d 325, 336 (2010). Dismissal is appropriate where no set of facts can be proved to entitle the plaintiff to the sought-after relief. *Lagan v. Balcor Co.*, 274 Ill. App. 3d 11, 16 (1995).

¶ 45 To state a cause of action under the Act, a plaintiff must set forth specific facts showing that the defendant (1) engaged in a deceptive act or practice, (2) in the course of trade or commerce, (3) with the intent that plaintiff rely on the deception, and that the deceptive act (4) proximately caused actual damages to the plaintiff. 815 ILCS 505/2 (West 2024); *White*, 368 Ill. App. 3d at 283.

¶ 46 Sprolls has failed to satisfy the pleading requirements to state a cause of action under the Act. Most notably, Sprolls has not alleged facts showing that Webb concealed the franchise restriction to induce him to enter into the transaction. The relevant inquiry is not whether Webb knew, at the outset, that Sprolls intended to resell the Vehicle. Rather, the question is whether Webb withheld material information in order to mislead Sprolls into proceeding with the purchase. See *Rockford Memorial Hospital v. Havrilesko*, 368 Ill. App. 3d 115, 122 (2006) (for a material omission to be actionable, the plaintiff must establish that the fact concealed was known to the defendant at the time of the concealment and was intended to induce reliance).

¶ 47 Here, Sprolls' own allegations do not support such a theory. Webb did not conceal the restriction, complete the sale, and leave Sprolls unable to resell the Vehicle. Instead, once Webb learned the relevant facts surrounding Sprolls' intended use of the Vehicle, it refused to complete the transaction and returned his money. Thus, the complaint does not allege that Webb used the franchise restriction as part of a deceptive scheme to induce Sprolls' purchase. At most, the allegations show that Webb declined to proceed with the sale after determining that the transaction would violate its franchise agreement. Accordingly, Sprolls failed to allege a deceptive act or practice under the Act.

¶ 48 With respect to damages, Sprolls pled that "as a proximate cause of defendant's conduct, plaintiff suffered substantial damages in an amount to be proven at trial." Sprolls' "actual

damages" allegation lacks the necessary specificity to survive dismissal. Further, on this record, no set of facts could be proved at trial to entitle Sprolls to relief. It is undisputed that Webb returned Sprolls' $3,000 deposit and his two undeposited certified checks, restoring Sprolls to the same financial position he occupied before placing his deposit. Sprolls' failure to allege actual damages was fatal to survival of his complaint for violation of the Act. Accordingly, we find the dismissal of count II proper.

¶ 49 Similarly, Sprolls' common law fraud claim fails. To state an action for common law fraud, the plaintiff must plead: (1) a false statement of material fact, (2) which the party making the statement knew or believed to be false, (3) with the intention to induce the plaintiff to act, and (4) that the plaintiff reasonably relied on the false statement, (5) resulting in damages to the plaintiff. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 496 (1996). "Fraud claims must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." *Id*. Unlike claims brought pursuant to the Consumer Fraud Act, a claim of common law fraud requires pleading actual reliance. *Ash v. PSP Distribution, LLC*, 2023 IL App (1st) 220151, ¶ 27.

¶ 50 Sprolls' complaint fails to satisfy these requirements. The complaint contains no specifically identified false statement made by Webb. Sprolls generally alleges that Webb made repeated statements that it would arrange for purchase and delivery of the Vehicle, but these allegations fail to identify what precisely was said and when the statements were made. Such vague and conclusory allegations are exactly the type that Illinois courts have consistently found insufficient to state a claim for common law fraud. *Ash*, 2023 IL App (1st) 220151, ¶ 22. A

complaint may not rest on mere unsupported factual conclusions, and the high standard of specificity applicable to fraud claims demands far more than what Sprolls has alleged here.

¶ 51 Sprolls' theory of fraudulent concealment fares no better. Sprolls contends that Webb's silence about its franchise restrictions, combined with its acceptance of payment, constitutes actionable active concealment. While it is true that silence accompanied by deceptive conduct can constitute fraudulent concealment under Illinois law, an action for fraudulent concealment requires that the plaintiff establish that the defendant concealed a material fact under circumstances that created a duty to speak, that the defendant intended to induce a false belief, and that the plaintiff could not have discovered the truth through reasonable inquiry. *Bauer v. Giannis*, 359 Ill. App. 3d 897, 902-03 (2005). Critically, as stated above, for a material omission to be actionable, the plaintiff must also establish that the fact concealed was known to the defendant at the time of the concealment and was intended to induce reliance. *Havrilesko*, 368 Ill. App. 3d at 122. Here, Sprolls does not allege with any specificity that Webb concealed its franchise restrictions with the intent to induce him to place his deposit or proceed with the transaction, nor does he allege facts establishing that Webb knew at the time of the initial transaction that his ultimate purpose in purchasing the Vehicle would implicate those restrictions. The restriction became known only after Sprolls himself disclosed his intent to resell, a disclosure that occurred over a year after he placed his deposit.

¶ 52 Moreover, Sprolls cannot establish the actual reliance required to sustain a common law fraud claim. Unlike a claim under the Consumer Fraud Act, common law fraud demands that a plaintiff plead and prove that he actually and reasonably relied on the false statement or omission to his detriment. *Ash*, 2023 IL App (1st) 220151, ¶ 27. Sprolls does not allege with sufficient

particularity that he would have acted differently had Webb disclosed its franchise restrictions at the outset of the transaction.

¶ 53    Finally, as with all other counts, Sprolls cannot establish actual damages. In his complaint, Sprolls alleged that "[b]y reason of the premises plaintiff has been damaged in the sum greater than $100,000." Although Sprolls' common law damages claim is at least more specific than his damages claim under the Act, it too must fail. Again, based on the pleadings before us, Sprolls can point to no facts that would entitle him to recovery on this claim. As the record bears out, Webb returned Sprolls' deposit and his two undeposited certified checks in full, restoring him to the financial position he occupied before the transaction. Accordingly, we affirm the circuit court's dismissal of count VI.

¶ 54                    D. Due Process Claims (Count IV)

¶ 55    As best we can ascertain from Sprolls' briefs on appeal, he attempts to argue that the circuit court erred in dismissing his due process claim under section 2-401 of the Uniform Commercial Code (810 ILCS 5/2-401 (West 2022)) and that the court failed to consider "Illinois Consumer Protection Rights" and misapplied the "State Action Doctrine."

¶ 56    Webb responds that the circuit court properly dismissed the due process violation claim because it is a private entity and Sprolls failed to allege any nexus between Webb and the State sufficient to establish state action. Further, Webb contends that no property right ever vested in Sprolls, as title cannot pass under section 2-401 without a valid contract.

¶ 57    The Illinois Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law nor shall any person be denied the equal protection of the laws." Ill. Const. 1970, art. I, § 2. To state a claim under the Illinois due process clause, a plaintiff must allege that state action deprived him of a protected right, privilege, or immunity. *Hill v. PS*

*Illinois Trust*, 368 Ill. App. 3d 310, 313 (2006). The Illinois due process clause stands "as a prohibition against governmental action, not action by private individuals." *Id*. The mere fact that a business is subject to state regulation does not by itself convert its action into that of the state. *Better Government Ass'n v. Illinois High School Ass'n*, 2016 IL App (1st) 151356, ¶ 33. Further, a private actor is subject to constitutional standards only when the State has such a close nexus to the challenged conduct that the conduct may fairly be attributed to the State. *Hill*, 368 Ill. App. 3d at 316. "Whether such a 'close nexus' exists depends on whether the State exercised coercive power or provided such significant encouragement, either overt or covert, that the choice must be deemed to be that of the State." *Id*. The mere approval or acquiescence of the State does not transform a private entity's conduct into state action. *Id*.

¶ 58    Here, Webb is a private automobile dealership. Sprolls pleaded no facts establishing any nexus between Webb's conduct and the State of Illinois. The complaint contains no allegation that any state official participated in, directed, compelled, or significantly encouraged Webb's decision to stop the transport truck and reclaim the Vehicle. Webb acted entirely on its own, pursuant to its privately negotiated franchise agreement with General Motors, not pursuant to any state statute, court order, or government directive. As stated earlier, the mere fact that a business operates in a state-regulated industry does not transform its private conduct into state action. *Better Government Ass'n*, 2016 IL App (1st) 151356, ¶ 33. Sprolls' argument that Webb's conduct occurred in the context of state-regulated vehicle sales is precisely the type of attenuated connection that courts have consistently found insufficient to establish state action. *Hill*, 368 Ill. App. 3d at 316.

¶ 59    Sprolls' reliance on section 2-401 to establish that title transferred to him when the Vehicle was loaded onto the transport truck is equally unavailing. Section 2-401 expressly provides that "title to goods cannot pass under a contract for sale prior to their identification to the contract."

810 ILCS 5/2-401(1) (West 2024). Since we have already determined that no valid contract was formed between the parties, title could never have passed to Sprolls. *Id*. Accordingly, we affirm the circuit court's dismissal of count IV.

¶ 60                    E. Tortious Interference Claims (Count V)

¶ 61    Sprolls next argues that the circuit court erred in dismissing his tortious interference claim where Webb intentionally interfered with a cognizable economic opportunity in his completed purchase and planned use of the Vehicle.

¶ 62    Webb responds that count V fails because Sprolls alleged no facts establishing a reasonable business expectancy, failed to identify any specific third party, and cannot establish damages because all money was returned.

¶ 63    The elements of the tort of intentional interference with existing contract rights were set out by our supreme court in *HPI Health Care Services, Inc., v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 154-55 (1989). Those elements include: (1) a reasonable expectation of entering into a valid business relationship, (2) the defendant's knowledge of the plaintiff's expectancy, (3) purposeful and unjustified interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship, and (4) damages to the plaintiff resulting from such interference. *Id.* Moreover, a plaintiff must allege an action by the defendant directed toward the party with whom the plaintiff expects to do business. *Associated Underwriters of America Agency, Inc. v. McCarthy,* 356 Ill. App. 3d 1010, 1020 (2005).

¶ 64    In his complaint, Sprolls alleged that Webb was aware that he is engaged in various business activities which include the purchase and resale of vehicles; that Webb's unlawful withholding of the purchased vehicle resulted in Sprolls' loss of future economic benefit and

Webb's wrongful conduct "disrupted [Sprolls'] business activities. For this alleged interference, Sprolls claims damages in excess of $50,000 and treble damages.

¶ 65    Sprolls' tortious interference claim fails at the first element. Sprolls' complaint does not allege a reasonable expectation of entering into a valid business relationship with any identifiable third party. Sprolls alleges generally that Webb was aware he engaged in various business activities, including the purchase and resale of vehicles, but this conclusory allegation is insufficient to establish a cognizable business expectancy. *McCarthy*, 356 Ill. App. 3d at 1020. A complaint may not rest on mere unsupported factual conclusions, and conclusions of fact will not suffice to state a cause of action regardless of whether they generally inform the defendant of the nature of the claim. *Storm & Associates, Ltd., v. Cuculich,* 298 Ill. App. 3d 1040, 1052 (1998). Sprolls identifies no specific person or entity with whom Sprolls had a reasonable expectation of entering into a business relationship, and Sprolls' failure to allege facts showing Webb's purposeful interference directed at any identifiable third party is fatal to this claim. *McCarthy*, 356 Ill. App. 3d at 1020.

¶ 66    Sprolls' argument that his completed purchase and planned use of the Vehicle itself constituted the cognizable economic opportunity is also unpersuasive. Tortious interference with prospective economic advantage is designed to protect a party's reasonable expectation of entering into a future business relationship with a third party, not to provide an alternative vehicle for recovering on a failed transaction with the very defendant alleged to have interfered. *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 511 (1991). To hold otherwise would allow Sprolls to circumvent the failure of his contract claims by recasting the same transaction as a tortious interference claim.

¶ 67    Sprolls plead no allegations sufficient to support a claim of tortious interference. Neither could there have been any facts presented at trial to support what is clearly a baseless claim. Thus, the circuit court did not err in dismissing count V.

¶ 68                              F. Federal Law Claims

¶ 69    Sprolls argues for the first time on appeal that the circuit court erred by dismissing his case without considering his federal consumer-protection rights under the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.* (2024)). Specifically, Sprolls contends that Webb failed to disclose material warranty and transaction limitations, improperly deprived him of warranty protections after accepting payment, and that the Act entitled him to damages and other relief. He further maintains that the Act's federal consumer-protection provisions preempt any contrary restrictions under Illinois contract law.

¶ 70    We find that Sprolls has forfeited these arguments. Upon review of the record, Sprolls did not raise any claim under the Magnuson-Moss Warranty Act or any related argument concerning federal preemption in the circuit court, in his response to Webb's motion to dismiss, or in his motion to reconsider. Because issues not raised in the circuit court are forfeited and may not be raised for the first time on appeal, we decline to consider these arguments. *Bank of New York Mellon v. Rogers*, 2016 IL App (2d) 150712, ¶ 32.

¶ 71                              III. CONCLUSION

¶ 72    For the reasons stated, we affirm the judgment of the circuit court.

¶ 73    Affirmed.